UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

ERIN HAZEN,

    Plaintiff,

v.

WOODLOCH PINES RESORT d/b/a
WOODLOCH PINES, et al.,

    Defendants.

CIVIL ACTION NO. 3:21-cv-00174

(SAPORITO, M.J.)

## MEMORANDUM

Woodloch Pines Resort ("Woodloch") is an all-inclusive family resort located in Pike County, Pennsylvania. Since the 1990s, it has offered corporate team building activities on an outdoor low ropes challenge course. One of the elements of this challenge course was a "balance beam" or "teeter-totter" device made up of a fulcrum with a plank on top of it. The plank or "beam" is 10-feet long and 10½-inches wide. The fulcrum is 12½-inches high and, when at its highest point, the end of the plank or beam is 3½-feet above the surface below. The area below and around the balance beam device was covered with wooden mulch, presumably to cushion the fall of any participants.

In June 2019, the plaintiff, Erin Hazen, was an assistant principal

at KIPP TEAM Academy, a public charter school in Newark, New Jersey. She had been working there for about a year. On Saturday, June 22, 2019, Hazen and ten of her colleagues from the "leadership team" at KIPP TEAM Academy were on the third day of a leadership retreat at Woodloch. That morning, they participated in the outdoor challenge course activities as a team. After completing several other activities, they attempted the "balance beam" activity, where Hazen was injured.

The team was instructed by Eric Ranner, Woodloch's corporate activities director, that the goal of the balance beam activity was to get the entire 11-person leadership team onto the plank without breaking either of two eggs that had been placed under each end of the plank.[1] The parties dispute whether Ranner gave any additional verbal instructions or warnings to the participants. Ranner was the only Woodloch employee present at the time.

After two unsuccessful attempts to complete the activity, the team was able to get ten members on the plank at once during its third attempt. When the eleventh team member mounted the plank, it became

---

[1] In addition to multiple Woodloch corporate entities, Ranner is a named defendant in this action, along with Robert Filarsky, an assistant social director at Woodloch and Ranner's supervisor that day.

unbalanced and Hazen fell off, along with other participants.[2] At least one other participant landed on top of Hazen.

As a result of her fall, Hazen suffered a gruesome ankle injury, including left ankle dislocation, a displaced left ankle bimalleolar fracture with transverse medial malleolar fracture, a transverse distal one-third fibula shaft fracture, syndesmotic rupture, and a minimally displaced proximal fracture in the metaphysis. Her medical treatment included three surgeries and ongoing physical therapy. Due to her injuries, resultant physical limitations, and her course of treatment, Hazen was forced to resign from her job at KIPP TEAM Academy.[3]

Hazen brought this federal diversity action asserting state-law negligence claims against each of the defendants. The defendants have answered the complaint, and, following the completion of discovery, they have moved for summary judgment. In support of their motion for summary judgment, the defendants argue that Hazen is barred from all recovery by the doctrine of primary assumption of the risk.

---

[2] The evidence suggests that some of the participants may have jumped off the plank, but it is undisputed that Hazen fell.

[3] After a period of unemployment, Hazen is currently employed in a lower-paying position as a teacher at a different charter school in Morristown, New Jersey.

Because this is a diversity action, we must apply Pennsylvania's substantive law and federal procedural law. *See Gasperini v. Ctr. for Humans., Inc.*, 518 U.S. 415, 427 (1996). "Under Pennsylvania law, assumption of the risk is established by showing that the injured party fully appreciated the nature of the risk it faced and voluntarily assumed it. In addition, the injured party must not have had a meaningful and reasonable alternative path to avoid the risk." *Kirschbaum v. WRGSB Assocs.*, 243 F.3d 145, 156–57 (3d Cir. 2001) (citation omitted); *see also Mucowski v. Clark*, 590 A.2d 348, 350 (Pa. Super. Ct. 1991) ("Voluntary assumption of the risk involves a *subjective* awareness of the risk inherent in an activity and a willingness to accept it. A plaintiff has voluntarily assumed the risk where he fully understands it and voluntarily chooses to encounter it.") (citation omitted and emphasis added). "Under the doctrine of assumption of the risk, a defendant is relieved of its duty to protect a plaintiff where the plaintiff has voluntarily and deliberately proceeded to face a known and obvious risk and therefore is considered to have assumed liability for his own injuries." *Barrett v. Fredavid Builders, Inc.*, 685 A.2d 129, 130 (Pa. Super. Ct. 1996); *see also Carrender v. Fitterer*, 469 A.2d 120, 125 (Pa. 1983)

(holding that, when an invitee assumes the risk of injury from a dangerous condition, the landowner no longer owes the invitee a duty of care).

As the *Carrender* court explained:

> A danger is deemed "obvious" when "both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising normal perception, intelligence, and judgment." For a danger to be "known," it must "not only be known to exist, but . . . also be recognized that it is dangerous and the probability and gravity of the threatened harm must be appreciated."

*Carrender*, 469 A.2d at 123–24 (quoting *Restatement (Second) of Torts* § 343A cmt. b (Am. L. Inst. 1965)) (citations omitted, ellipsis in original).

"Whether the plaintiff knows of the existence of the risk, or whether he understands and appreciates its magnitude and its unreasonable character, is a question of fact, usually to be determined by the jury under proper instructions from the court. The court may itself determine the issue only where reasonable men could not differ as to the conclusion." *Staymates v. ITT Holub Indus.*, 527 A.2d 140, 146 (Pa. Super. Ct. 1987) (quoting *Restatement (Second) of Torts* § 496D cmt. e); *see also Kaplan v. Exxon Corp.*, 126 F.3d 221, 225 (3d Cir. 1997); *Mucowski*, 590 A.2d at 350 (quoting *Staymates*); *Carrender*, 469 A.2d at 124. As this court has

previously explained:

> Given that its application is a "drastic measure" barring a plaintiff's recovery, to grant summary judgment on assumption of the risk as a matter of law the court must—conclusively and beyond question—find that the plaintiff was subjectively aware of a specific risk, voluntarily accepted it and acted in spite of that risk, and suffered harm contemplated by that specific risk. The defendant's burden to establish assumption of the risk is a tall order because assumption of the risk requires knowledge of a specific risk. "It is not enough that the plaintiff was *generally* aware that the activity in which he was engaged had accompanying risks. Rather, the plaintiff must be aware of 'the *particular* danger' from which he is subsequently injured in order to voluntarily assume that risk as a matter of law."

*Smerdon v. GEICO Cas. Co.*, 342 F. Supp. 3d 582, 587 (M.D. Pa. 2018) (quoting *Bullman v. Giuntoli*, 761 A.2d 566, 569 (Pa. Super. Ct. 2000), and *Barillari v. Ski Shawnee, Inc.*, 986 F. Supp. 2d 555, 562–63 (M.D. Pa. 2013)) (footnotes omitted).

Here, it is undisputed that Hazen was generally aware of the risk that she might fall from the balance beam during this activity. But "awareness of a general risk does not amount to awareness of a specific risk." *Smerdon*, 342 F. Supp. 3d at 588 (citing *Barillari*, 986 F. Supp. 2d at 562–63). Awareness of the specific risk presented by the balance beam activity here includes not just an appreciation of the general possibility

that she might fall, but also an appreciation of the likelihood of a fall and the potential for serious injury such as the complex multiple ankle fractures and other injuries that our plaintiff in fact suffered.[4] *See Kirschbaum*, 243 F.3d at 157 (finding evidence sufficient to permit a reasonable jury to conclude that office building tenant, who was aware of a broken handrail and that it would not aid him if he were to trip while on the stairs, lacked the necessary appreciation of the likelihood that he could fall and need to rely on the handrail); *Rice v. Skytop Lodge Corp.*, No. 00-2243, 2002 WL 775484, at *3 (M.D. Pa. Apr. 23, 2002) (finding evidence sufficient to permit a reasonable jury to conclude that a sledder, who was aware of general risks of sledding and who had observed the placement of a plastic fence at the bottom of the sledding hill, did not understand the specific risk of serious injury that might be caused by colliding with the fence); *Mucowski*, 590 A.2d at 350 (finding evidence sufficient to permit a reasonable jury to conclude that a senior

---

[4] We note that, while Hazen could have visually observed the particular dimensions of the balance beam device and ascertained that it was made of wood, she had no experience performing this or similar activities in the past, and she had no knowledge of the device's particular construction, including its weight capacity or the fact that the plank was not itself secured to the fulcrum.

engineering student, who was familiar with a pool and the depth of the water therein, was not subjectively aware of the specific risk that he could strike his head on the bottom of the pool when diving into 4 feet of water from a railing around the pool). Hazen's failure to fully appreciate the specific risk of serious injury posed by the balance beam activity is further underscored by the fact that, between herself and all ten of her leadership team colleagues that day, none believed the balance beam activity was so unsafe that they should decline to participate. *See Smerdon*, 342 F. Supp. 3d at 589. "Under *Carrender*, this issue goes to the jury unless reasonable minds could not disagree." *Kaplan*, 126 F.3d at 225.

In addition, we note that, "[a]mong the circumstances to consider in evaluating the voluntariness of the plaintiff's action is whether the plaintiff had a real 'choice.'" *Kaplan*, 126 F.3d at 226 (quoting *Howell v. Clyde*, 620 A.2d 1107 (Pa. 1993) (plurality opinion)). Here, the parties dispute whether Hazen's participation in the balance beam activity was voluntary. In her affidavit, Hazen has stated that she felt her participation in this team building activity was required rather than voluntary, noting that she had just finished her first year as an assistant

principal at the charter school, she was required in that role to lead by example and thus participate fully in team-building activities, and the purpose of this particular activity was to get the entire team of eleven onto the plank at one time. Hazen Aff., Doc. 36-7.[5] Thus, this element of the defendants' assumption of the risk defense is also subject to a genuine

---

[5] In addition to deposition testimony by the parties themselves, deposition testimony by various nonparty witnesses, documentary and photographic evidence, and expert witness reports, the plaintiff has relied on her own testimonial affidavit, which is offered as a supplement to her deposition testimony and the other evidence. In their reply brief, the defendants have objected to consideration of this affidavit, arguing that it should be disregarded by the court under the "sham affidavit" doctrine. *See generally Daubert v. NRA Grp., LLC*, 861 F.3d 382, 391 (3d Cir. 2017) ("When a nonmovant's affidavit contradicts earlier deposition testimony without a satisfactory or plausible explanation, a district court may disregard it at summary judgment in deciding if a genuine, material factual dispute exists. This is the sham-affidavit doctrine. In applying it we adhere to a 'flexible approach,' giving due regard to the 'surrounding circumstances.'") (citations omitted); *Perma Res. & Dev'p Co. v. Singer Co.*, 410 F.2d 572, 577–78 (2d Cir. 1969) (seminal case on the sham affidavit doctrine). But "the principle does not apply if the deposition and the later sworn statement are not actually contradictory." *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 43 (2d Cir. 2000). "To be covered by the sham affidavit doctrine, the affidavit testimony must actually *contradict* previous deposition testimony, not merely differ from it or be in tension with it." *Ramirez v. Lora*, No. 18-11230, 2022 WL 1539176, at *8 (D.N.J. May 16, 2022). Here, the defendants have characterized the plaintiff's affidavit as "self-serving and boot strapping" and "incredulous," but they have failed to identify any contradictory testimony whatsoever. *See* Defs.' Reply Br. 5–8, Doc. 37. Thus, we decline to disregard the Hazen affidavit as evidence on summary judgment.

dispute of material fact.

Accordingly, based on the facts and evidence of record, viewed in the light most favorable to the non-moving plaintiff, we find that a reasonable jury could conclude that the plaintiff was not subjectively aware of the specific risk of serious injury posed by her participation in the balance beam activity that resulted in her injuries, or that she did not voluntarily accept that risk. Accordingly, the motion for summary judgment will be denied.

An appropriate order follows.

Dated: February 16, 2024

*Joseph F. Saporito, Jr.*
JOSEPH F. SAPORITO, JR.
United States Magistrate Judge